# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### May 28, 2015 Session

## THE TENNESSEAN ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY ET AL.

### Appeal by Permission from the Court of Appeals, Middle Section
#### Chancery Court for Davidson County
#### No. 14156IV    Russell T. Perkins, Chancellor
_____

#### No. M2014-00524-SC-R11-CV  - Filed March 17, 2016
_____

Holly Kirby, J., concurring.

I fully concur in the majority opinion in this case but write separately to respond to the dissent.

One of this Court's foremost obligations is to preserve and protect the integrity of our State's criminal justice system. The dissent in this case advocates a position that would amount to an abdication of this responsibility and would undermine the justice system we are charged to protect.

The dissent in this case would throw open police files on pending investigations and criminal prosecutions, not only to responsible media sources, but also to suspected perpetrators under investigation and their allies, gang members, voyeurs, pornographers, anyone.  As outlined in the majority opinion, such a ruling could have catastrophic consequences for all involved in the criminal justice system.  Citizens who report crimes privately could be outed.  Confidential police information sources could be revealed. Police efforts to keep the details of a crime and its investigation secret until the perpetrator is apprehended would be for naught.  The identity of persons suspected of a crime but later exonerated could be made public.  Victims of sexual crimes could find their personal information, as well as videos and photos of their ordeal, readily available to those who would post the information online or otherwise further torment them. Inflammatory and inadmissible information about criminal defendants could taint the jury pool and compromise defendants' right to a fair trial.  It is hard to overstate the damage to our justice system that could result from adoption of the dissent's position.

Contrary to the representations in the dissent, the holding of the majority in this case is not a departure from the Court's prior decisions, including one decision in which

the dissenting justice concurred. With the concurrence of the dissenting justice, this Court has recognized that current Court rules prevent the release of criminal investigative files relevant to pending criminal proceedings. In <u>Schneider v. City of Jackson</u>, 226 S.W.3d 332 (Tenn. 2007), the Court (including the dissenting justice) described a 1987 Tennessee Supreme Court decision as holding "that Rule 16(a)(2) exempted from disclosure under the Public Records Act all 'open' criminal investigative files that 'are relevant to pending or contemplated criminal action.'" <u>Schneider</u>, 226 S.W.3d at 341 (describing <u>Appman v. Worthington</u>, 746 S.W.2d 165, 166 (Tenn. 1987)). With the concurrence of the dissenting justice, the <u>Schneider</u> Court held: "[I]nformation relevant to ongoing criminal investigations . . . would clearly have been exempt from disclosure under Rule 16(a)(2) and this Court's decision in <u>Appman</u>." <u>Id</u>. at 345. And again with the concurrence of the dissenting justice, the Court in <u>Schneider</u> pointed out the harm that could result from the very position now advocated by the dissent in this case. The <u>Schneider</u> Court "recognize[d] that harmful and irreversible consequences could potentially result from disclosing files that are involved in a pending criminal investigation." <u>Id</u>. at 345-46.

The only justification the dissent offers for its extreme position is purported deference to the legislature. This is, in the words of the late Justice Antonin Scalia, "pure applesauce."[1] After proclaiming in the dissent in <u>Rye v. Women's Care Ctr. of Memphis, MPLLC</u>[2] that the "fundamental responsibility of an independent judiciary is to protect against the unwarranted intrusion of the legislative branch," the dissent now pivots to meekly cede the Court's most precious responsibility, preservation of the integrity of our system of justice. "Jiggery-pokery," indeed.[3]

Our legislature recognizes and respects that, while criminal proceedings are pending, current law prevents the release of criminal investigative files to the public. In 2014, the legislature enacted Tennessee Code Annotated section 10-7-504(q),[4] which

---

[1] <u>King v. Burwell</u>, 135 S. Ct. 2480, 2501 (2015) (Scalia, J., dissenting) (regarding Affordable Care Act).

[2] <u>Rye v. Women's Care Ctr. of Memphis, MPLLC</u>, No. W2013-00804-SC-R11-CV, 2015 WL 6457768, at *45 (Tenn. Oct. 26, 2015) (Wade, J., dissenting).

[3] <u>King</u>, 135 S. Ct. at 2500 (Scalia, J., dissenting).

[4] Tennessee Code Annotated section 10-7-504(q) provides:

(q)(1) Where a defendant has plead guilty to, or has been convicted of, and has been sentenced for a sexual offense or violent sexual offense specified in § 40-39-202, the following information regarding the victim of the offense shall be treated as confidential and shall not be open for inspection by members of the public:

(A) Name, unless waived pursuant to subdivision (q)(2);

governs the release of information regarding the victim of a sexual crime *after* conviction and sentencing of the perpetrator. This statute dovetails with current law that exempts from public disclosure files that are involved in a pending criminal investigation. It would have no purpose if open criminal investigative files were available to the public *prior* to conviction and sentencing.[5]

---

(B) Home, work and electronic mail addresses;

(C) Telephone numbers;

(D) Social security number; and

(E) Any photographic or video depiction of the victim.

(2)(A) At any time after the defendant or defendants in a case have been sentenced for an offense specified in subdivision (q)(1), the victim of such offense whose name is made confidential pursuant to subdivision (q)(1)(A) may waive such provision and allow the victim's name to be obtained in the same manner as other public records.

(B) The district attorney general prosecuting the case shall notify the victim that the victim has the right to waive the confidentiality of the information set forth in subdivision (q)(1)(A).

(C) If the victim executes a written waiver provided by the district attorney general's office to waive confidentiality pursuant to subdivision (q)(2)(A), the waiver shall be filed in the defendant's case file in the office of the court of competent jurisdiction.

(3) Nothing in this subsection (q) shall prevent the district attorney general or attorney general and reporter and counsel for a defendant from providing to each other in a pending criminal case or appeal, where the constitutional rights of the defendant require it, information which otherwise may be held confidential under this subsection (q).

(4) Nothing in this subsection (q) shall be used to limit or deny access to otherwise public information because a file, document, or data file contains some information made confidential by subdivision (q)(1); provided, that confidential information shall be redacted before any access is granted to a member of the public.

(5) Nothing in this subsection (q) shall be construed to limit access to records by law enforcement agencies, courts, or other governmental agencies performing official functions.

[5] The legislative history of Tennessee Code Annotated section 10-7-504(q) shows that the remarks by all interested parties, either for or against the proposed legislation, presupposed that the law at that time prevented the disclosure of victims' personal information and video or photographic depiction of victims while the criminal proceedings are pending. Based on that premise, media groups opposed the legislation, arguing that, if it were enacted, the media would never have a way to contact a sex crime victim who chose not to execute a waiver of the statute's protection. Representative Curry Todd supported the legislation; he spoke passionately about being a police officer in the sex crimes unit and

The dissent's professed concern for the rights of the victim in this case can only be described as high irony. The ruling urged by the dissent would leave witnesses and crime victims—including children, the mentally incompetent, the financially destitute—to fend for themselves in the wake of public records requests seeking their personal information, agonizing photos and videos, and other sensitive information. These requests could be made by anyone, including perpetrators and their consorts, or others who might seek to exploit or threaten them. And this is presuming that victims would even learn of any records requests when they are made.[6]

The integrity of our criminal justice system depends on the Court setting the parameters for the flow of information in pending criminal matters. The majority in this case shoulders the Court's solemn responsibility to our State. For this reason, I concur.

_____
HOLLY KIRBY, JUSTICE

---

seeing perpetrators or their allies access a criminal file after conviction and sentencing and then use the information to humiliate or harass the victim. House State Gov't Comm. 3/25/14, discussion of HB 2361.

[6] Tennessee Code Annotated section 10-7-504(q), as set forth in footnote 4 of this concurring opinion, provides for the district attorney general to notify the victim of a records request and of the victim's option to waive the protection of the statute. As noted above, this statute applies only *after* the perpetrator has been convicted and sentenced. Under the ruling urged by the dissent, while the criminal investigation and proceedings are pending, there is no one who would be responsible for notifying a witness or victim when a records request is made, and the district attorney general would have no authority to represent the witness or victim in any ensuing records request litigation.